UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLINE HARPER and COLE ULRICH,

        Plaintiffs,                              Case Number 21-12907

v.                                                   Honorable David M. Lawson

GENERAL MOTORS, LLC,

        Defendant.

_____/

## OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION TO STAY DISCOVERY

Plaintiffs Caroline Harper and Cole Ulrich allege in a complaint that they each purchased vehicles manufactured by defendant General Motors, LLC that were equipped with model 8L eight-speed automatic transmissions, which, they say, were defective. When the plaintiffs purchased their vehicles from GM dealerships in California, they signed paperwork that contained an arbitration clause, which GM seeks to enforce here. The arbitration clause is enforceable, and the plaintiffs' objections to its application do not alter that conclusion. The motion will be granted, the case will be referred to arbitration, and this matter will be closed administratively.

I.

This case is factually related to the case of *Speerly v. General Motors, LLC*, 19-11044, currently pending in this Court, with which the parties are familiar. The plaintiffs in that case allege on behalf of a putative class of car and truck buyers, none of whom reside in California, that the automatic transmissions in their vehicles occasionally will "slip, buck, kick, jerk and harshly engage." They say that, when the transmission causes the vehicle to perform erratically, such as with sudden or delayed acceleration, the vehicles may be unsafe to drive. All of the car and truck models implicated by the related cases were made by defendant GM. The *Speerly* plaintiffs filed

several suits which were consolidated in this Court on behalf of putative classes including the owners of thousands of vehicles that, they claim, have defective transmissions, which GM has refused to fix or replace under its express warranty.

In this case, plaintiff Caroline Harper alleges that she purchased a 2016 Cadillac CT6 from Fremont Cadillac GMC Buick in Fremont, California. Plaintiff Cole Ulrich alleges that he purchased a 2017 Chevrolet Silverado 1500 from Paradise Chevrolet Cadillac in Temecula, California. Both of those vehicles were equipped with a version of the 8L transmission and are included in the class of accused vehicles in *Speerly*. Harper and Ulrich both state that their vehicles exhibit the same driving faults as the class vehicles in *Speerly*.

The plaintiffs acknowledge that they signed sales paperwork at their respective dealerships that contained an arbitration clause. In their response to the motion to compel arbitration, the plaintiffs represent that Ulrich does not oppose the defendant's demand for arbitration. However, Harper filed a supplemental opposition in which she raised a single ground for her continued resistance to the arbitration demand. The Court, therefore, will focus on Harper's claim.

Harper admits that she executed a purchase contract with Fremont Cadillac GMC Buick when she bought her vehicle. *See* Mot. to Compel Arb., ECF No. 9-1, PageID.237-238. At the top of the first page, directly below the identification of the parties, the contract advises the purchaser that "You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit." *Id.* at 237. The contract identifies the "amount of credit provided to you or on your behalf" as $55,000, and other details of the financing disclosed in the document supposedly correspond to the terms of an auto loan that Harper obtained from her credit union. It also notes the application against the purchase price of a $14,000 manufacturer's rebate and Harper's payment by personal

check of $8,000. *Ibid.* Harper signed the contract in several places. *Ibid.* The contract contains an arbitration provision that reads as follows:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract), shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. . . . Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.)

*Id.* at PageID.238. The contract also includes a choice of law provision stating that California law governs. *Ibid.* ("Federal law and California law apply to this contract.").

The complaint in this case was filed on December 13, 2021. On February 14, 2022, the defendant filed its motions to compel arbitration and to stay the deadline to answer the complaint. On February 17, 2022, the case was reassigned to this Court as a companion to the consolidated *Speerly* matters.

II.

The defendant argues in its opening motion that under controlling Sixth Circuit decisions, questions about the enforceability and scope of an arbitration provision, including the enforceability of a contract as a whole, must be delegated to an arbitrator for decision where a contract includes an arbitration provision with a delegation clause. The defendant argues that only challenges to the enforceability of the arbitration provision itself are reserved for the Court to decide, where there is no dispute that a contract existed between the parties.

In her initial response to the motion, Harper apparently concedes all of the defendant's points directed to the enforceability of the arbitration clause itself, and she asserts that she is not

raising any challenge to either the arbitration provision or the defendant's standing to enforce it. But in a supplemental opposition, Harper argues that (1) this Court has authority to determine whether Harper's purchase agreement with the dealer is enforceable, (2) the purchase agreement in question is not enforceable because Harper was induced to enter into the agreement by mistake, and (3) since the contract as a whole is unenforceable, so is the arbitration clause that was embedded within. Harper asserts that she executed the agreement in question under a mistaken belief about the basis of the purchase. She maintains that she never intended to sign a contract that provided for financing with the dealership, and although she did obtain a loan from her credit union, her forward-facing agreement with the dealership would appear to be a cash sale that obviated any retail installment sales contract.

"'[A]rbitration is a matter of contract,' meaning 'courts must "rigorously enforce" arbitration agreements according to their terms.'" *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). The parties may designate the issues that they will submit to the arbitrator. *Lamps Plus, Inc. v. Varela*, --- U.S. ---, 139 S. Ct. 1407, 1416 (2019). So they "may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, --- U.S. ---, 139 S. Ct. 524, 529 (2019). However, when the parties delegate to the arbitrator the "threshold arbitrability questions," they must do so in the agreement "by 'clear and unmistakable evidence.'" *In re StockX*, 19 F.4th at 878 (quoting *Henry Schein*, 139 S. Ct. at 530). "Such a choice is typically evidenced in a so-called 'delegation' clause or provision." *Ibid.*

When there is a delegation provision within the arbitration clause, what role remains for the Court to decide questions of enforceability? The cases plainly instruct that delegation provisions, like arbitration clauses, are severable "from the remainder of the contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010). "[U]nder the severability principle, [courts] treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears." *New Prime Inc. v. Oliveira*, --- U.S. ---, 139 S. Ct. 532, 538 (2019). "Where . . . a delegation provision calls for an arbitrator to decide the validity and enforceability of both the arbitration provision and the contract in which it appears, courts may only decide a challenge to 'the delegation provision specifically,' 'or claims that the agreement to arbitrate was never concluded.'" *In re StockX*, 19 F.4th at 879 (quoting *Rent-A-Center*, 561 U.S. at 72; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 300 (2010)). "Thus, 'if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator' and that delegation provision stands, 'a court may not decide the arbitrability issue.'" *Ibid.* (quoting *Henry Schein*, 139 S. Ct. at 530).

Those guideposts chart the course for courts to follow when faced with challenges to contractual arbitration provisions, as here. When parties do not challenge either "the existence of the contract or the making of the [arbitration] clause, . . . the validity of the contract [must] be first determined by an arbitrator rather than by a district court." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 518 (6th Cir. 2004) (citing *Prima Paint*, 388 U.S. 395, 403 (1967); *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 490 (6th Cir. 2001)). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 440 (2006). The logical corollary: a general arbitration clause is

enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for rescission applies specifically to the arbitration clause." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 628 (6th Cir. 2004) (citing *Prima Paint*, 388 U.S. 395).

The Sixth Circuit has synthesized these rules into a two-step analytical process. In the first step, the Court decides whether a contract was formed and is in existence. In the second step, courts "decide any remaining enforceability or validity challenge only if it would 'affect the [delegation provision] alone' or 'the basis of [the] challenge [is] directed specifically to the [delegation provision].'" *In re StockX*, 19 F.4th at 880 (quoting *Rent-A-Center*, 561 U.S. at 71-72).

"To determine whether the existence of an agreement is 'in issue,' [the Court] applies the standard for summary judgment." *Id.* at 881 (citing *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)). Under that standard, "the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists." *Ibid.*

In this case, the parties agree — consistently with the choice of law clause in the purchase agreement — that California law controls. "The existence of a contract under California law requires four essential elements: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration." *Fleming v. Oliphant Fin., LLC*, 88 Cal. App. 5th 13, --- Cal. Rptr. 3d ---, 2023 WL 1255617, at *4 (Jan. 31, 2023) (citing Cal. Civ. Code, § 1550). Three of those elements are undisputed and self-evident here. There is no suggestion that either party lacked capacity to contract. The purchase of a vehicle is a lawful subject of contract, and there is no

suggestion otherwise. Mutual consideration for the purchase is demonstrated by the delivery of the vehicle and payment of the sale price.

The plaintiff's sole ground for resisting enforcement of the contract including the arbitration term is her claim that she did not consent to the agreement because she thought that the document she signed was merely a "receipt" and not (as she characterizes it in hindsight) a "financing agreement." However, the plaintiff has put forth no evidence to rebut the record showing that she executed the document by her signature. Under California law, "a signature on a written contract is an objective manifestation of assent to the terms set forth there." *Natural-Immunogenics Corp. v. Newport Trial Grp.*, No. 15-2034, 2022 WL 3575416, at *2 (C.D. Cal. June 30, 2022) (quoting *Rodriguez v. Oto*, 212 Cal. App. 4th 1020, 1027, 151 Cal. Rptr. 3d 667, 672 (2013)). "If the terms are unambiguous, there is ordinarily no occasion for additional evidence of the parties' subjective intent," and "[t]heir 'actual intent,' for purposes of contract law, is that to which they manifested assent by executing the agreement." *Rodriguez*, 212 Cal. App. 4th at 1027, 151 Cal. Rptr. 3d at 672.

The plaintiff asserts that she did not read or fully understand the purchase agreement, but "a party who signs a written agreement generally is bound by its terms, even though [s]he neither reads it nor considers the legal consequences of signing it." *Operating Engineers Pension Tr. v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984) (citing *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 671, 97 Cal. Rptr. 811, 813 (Ct. App. 1971) ("Respondent admits that he signed a stock exchange application form which contained an agreement to arbitrate . . . [but he] contends that the agreement to arbitrate was unenforceable because there was no mutual assent to that provision . . . [because] he was unaware of the clause because he did not read it. But failure to read a contract before signing is not in itself a reason to refuse its enforcement.")). "This

proposition, however, is qualified by the principle that he who signs a document reasonably believing it is something quite different than it is cannot be bound to the terms of the document. For example, one who signs a promissory note reasonably believing he only gave his autograph is not liable on the note." *Ibid.* (citations omitted).

The plaintiff contends that she did not understand that she was signing a "finance agreement" rather than a "receipt" for a "cash sale." However, the agreement plainly states in the preamble that the sale of the vehicle may be completed on either a cash or credit basis. *See* Purchase Contract, ECF No. 9-1, PageID.237 ("You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit."). Moreover, nothing in the agreement suggests that the plaintiff undertook any obligation to make any payments to the dealer beyond conveying her "convenience check" from the credit union and a personal check that together covered the entire agreed-upon "cash price" for the sale. The contract also identifies the "amount of credit provided *to you* or *on your behalf*," *ibid.*, as $55,000, and other details of the financing arrangement that are disclosed evidently correspond to the terms of the auto loan that Harper obtained from her credit union. The contract acknowledges the application against the purchase price of the full amounts tendered by the plaintiff in her checks for $55,000 and $8,000. There is no suggestion that any attempt ever was made by the dealer to collect any other amounts besides those cash payments. It is undisputed that the car was delivered as promised, and the dealer cashed the two checks several days later, completing the transaction.

The plaintiff attempts to cast the document as a "superfluous" contract for "financing" that was unnecessary to the sale. However, she admits that she did obtain financing for the car from her credit union. Nothing in the agreement suggests otherwise. The disclosures of the financing arrangement likely were included by the dealership to satisfy the usual (and mandatory) disclosure

requirements that apply to all consumer finance transactions. *See* Federal Trade Commission: Truth in Lending Act ("This Act (Title I of the Consumer Credit Protection Act) authorizes the Commission to enforce compliance by most non-depository entities with a variety of statutory provisions. Among other requirements, the Act requires creditors who deal with consumers to make certain written disclosures concerning finance charges and related aspects of credit transactions (including disclosing an annual percentage rate)."), https://www.ftc.gov/legal-library/browse/statutes/truth-lending-act. The plaintiff has put forth no evidence to refute the plain construction of the document as a purchase agreement for her vehicle, embodying all of the terms of sale to which she agreed.

Moreover, the plaintiff affirmatively concedes that a contract *was formed* by her execution of the purchase agreement, albeit by mistake. *See* Plf.'s Supp. Resp., ECF No. 30-1, PageID.442 ("Harper never intended to enter into a financing agreement with the dealership and did not understand the documents she was signing. Nor did she ever make a payment to the dealership on her auto loan. Therefore, *the contract* only *formed* because of a mistake.") (emphasis added). As the plaintiff highlights in her opposition, she has not made any showing that the contract in question was *never formed* or is *nonexistent*. Instead, she interposes a defense of unilateral mistake and seeks equitable rescission of the agreement. Certainly, under California law, a party may rescind a contract that was formed "if that party's consent was given by mistake." *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, No. 15-01280, 2023 WL 606933, at *24 (E.D. Cal. Jan. 27, 2023) (citing Cal. Civ. Code § 1689(b)(1)). But the evaluation of such defenses claiming that a contract is void, unenforceable, or subject to rescission are beyond the threshold inquiry of whether a contract that embodies an arbitration clause exists in the first instance. *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 629 (6th Cir. 2004) (holding that the defense of mutual mistake must

be addressed by an arbitrator and could not supply grounds to avoid arbitration); *see also In re StockX*, 19 F.4th at 882-83 (holding that the "plaintiffs' infancy argument does not concern the formation or existence of a contract" and that "[i]t makes no difference whether infancy under state law renders a contract void or voidable," unless that defense under state law "amounts to an argument that the agreement was never concluded").

The arbitration agreement here has language that plainly delegates to the arbitrator full authority to determine the scope and enforceability of the arbitration clause. That language is clear and unmistakable evidence of the parties' intent to have an arbitrator decide all questions about the scope, applicability, and enforceability of the arbitration clause. *See In re StockX*, 19 F.4th at 878-79. Notably, the language also places squarely in the arbitrator's purview both the plaintiffs' claims of alleged defects in her car, including her resort to remedies under the manufacturer's warranty, and questions about whether the defendant may invoke the clause to compel arbitration. The plaintiff has not presented any challenge to the scope or enforceability of the arbitration clause itself, and she has not argued either that her defect claims are beyond the scope of the agreement to arbitrate, or that the defendant lacks standing to demand arbitration.

Harper has not raised any viable challenge to the "existence" or "formation" of a contract via her execution of the purchase agreement. The contract undisputedly exists. The contention that the agreement is void or voidable because of a mistake is a question in the first instance for the arbitrator. If Harper prevails on that defense before the arbitrator, she may return to this Court to pursue her claims on the merits. But not now.

III.

GM also filed a motion to stay discovery and the deadline to answer the complaint pending a decision on its motion to compel arbitration. That relief effectively already has been granted

since the Court set both motions for a hearing together, and no answer has yet been filed. The decision compelling arbitration moots the stay motion.

IV.

The plaintiffs have not offered evidence challenging the contract formation or existence and they have not challenged the validity of the arbitration or delegation clauses. Therefore, the case must be decided in the first instance by an arbitrator.

Accordingly, it is **ORDERED** that the defendant's motion to compel arbitration (ECF No. 9) is **GRANTED**.

It is further **ORDERED** that the dispute shall be submitted to arbitration in accordance with the contract.

It is further **ORDERED** that to avoid administrative difficulties the Clerk of Court shall **CLOSE** this case for statistical purposes only. Nothing in this order or in the related docket entry shall be considered a dismissal of this matter.

It is further **ORDERED** that either party may apply to the Court to reopen the matter for the purpose of enforcing, confirming, or vacating, as appropriate, the arbitral award.

It is further **ORDERED** that this Court shall retain jurisdiction to review and enforce or vacate the arbitral award.

It is further **ORDERED** that the defendant's motion to stay discovery and the deadline to answer the complaint (ECF No. 10) is **DISMISSED as moot**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   March 21, 2023