UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLINE HARPER, COLE ULRICH,
PAUL AIELLO, DALE BLAND, DANIEL
DAVIS, PAUL NORTHUP, RYAN VOLMERT,          Case Number 21-12907
and SEAN JOSEPH ZIMMETT,                    Honorable David M. Lawson

          Plaintiffs,

v.

GENERAL MOTORS, LLC,

          Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL SUPPLEMENTAL DISCOVERY RESPONSES

The plaintiffs in this long-running putative class action dispute allege that defendant General Motors, LLC sold vehicles with defective transmissions in the 2015 through 2018 model years. GM contends that some of the plaintiffs brought their grievances to court too late. The plaintiffs counter that they discovered the transmission defects and advanced their claims within the applicable statutes of limitation. GM served interrogatories and document requests seeking information on attorney-client contacts, which plaintiffs' counsel refused to provide. GM now has filed a motion "for an order compelling Plaintiffs to supplement their responses to GM's Request for Production No. 41 and Interrogatory No. 16 and provide the names of Plaintiffs and putative class members who responded to Plaintiffs' counsel's advertisements concerning the subject matter of this litigation and the dates of those responses." The Court heard oral argument on May 20, 2026, and is convinced that the substantial burden of producing the requested information far outweighs the likely benefit that may result. The motion to compel will be denied.

I.

This case is related to two others filed in this Court seeking redress from GM for the defective transmissions in the target vehicles: *Ulrich v. General Motors, LLC*, No. 24-11007, and *Speerly v. General Motors, LLC*, No. 19-11044. The Court certified several subclasses in the *Speerly* matter, but the Sixth Circuit could not accept that ruling. In its opinion reversing the certification order, that court summarized the basic facts as follows:

> General Motors' Hydra-Matic became the first readily accessible automatic transmission on the market in 1939. It had four gears. From 2015 to 2018, GM offered an eight-gear Hydra-Matic transmission. That version had two alleged problems. It led some GM cars occasionally to shudder, and it led some GM cars occasionally to lurch. The two problems had nothing to do with operator error, even if some of the symptoms called to mind the experience of getting a ride from a novice stick-shift driver. A group of car buyers filed a class action against GM to answer for the two defects under a range of state common law and statutory theories: express warranty, implied warranty, consumer protection laws, and fraudulent omission.

*Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 312 (6th Cir. 2025) (en banc). The facts were discussed in more detail in the Court's class certification ruling, *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 501 (E.D. Mich. 2023), *vacated and remanded*, 143 F.4th 306, and in its preceding opinions on the defendant's pleading challenges to the amended class action complaint, *Francis v. General Motors, LLC*, 504 F. Supp. 3d 659, 667 (E.D. Mich. 2020), and motions challenging expert witnesses, *Won v. General Motors, LLC*, No. 19-11044, 2022 WL 3010886, at *1 (E.D. Mich. July 28, 2022). For the purposes of the present motion, the pertinent facts concern when the individual plaintiffs and prospective class members in the *Ulrich* case, which was filed years after the opening pleadings in the other consolidated matters, could have discovered or did discover information about the alleged transmission defect from the public record of this litigation. Relevant to that topic, the defendant seeks disclosure of the names of persons who contacted class counsel about the ongoing litigation and the dates when those persons made contact.

-2-

The relevant historical facts are undisputed for the purposes of this motion. Plaintiffs' counsel filed the complaint in the *Ulrich* matter in April 2024, alleging, among other things, that none of the individual plaintiffs could have discovered the facts necessary to bring their claims before this Court issued its ruling on the class certification motion in *Speerly* in March 2023. When it ruled on GM's motion to dismiss in *Ulrich*, the Court deferred resolution of the defendant's statute of limitations defense to the summary judgment stage. GM thereafter sought information about efforts by class counsel to advertise the litigation to consumers and the responses to that advertising. Plaintiffs' counsel refused to divulge names or dates when any persons contacted the plaintiffs' law firms. GM served a third-party subpoena on the plaintiffs' service provider, ClassAction.org. The respondent and the plaintiffs moved to quash the subpoena issued in the Southern District of New York.

Judge Paul A. Engelmayer in the Southern District of New York issued a lengthy written opinion on the motion to quash. He upheld most of the plaintiffs' and respondent's objections, finding that (1) substantive responses to questionnaire forms submitted by prospective claimants constituted privileged communications between counsel and potential clients for the purposes of seeking or obtaining legal advice and were not discoverable, (2) written communications between class counsel and the service provider constituted attorney work product and were not discoverable, (3) GM had not demonstrated a substantial need for information "related to" advertisements, as opposed to the content of advertisements published to the internet at large, and (4) GM's request for "any and all communications" relating to a lengthy list of vehicle models and 112 named individuals was "dramatically overbroad" because it was not reasonably cabined in terms of date or subject matter. *Ulrich v. Gen. Motors LLC*, No. 25-545, 2026 WL 183676, at *4-13 (S.D.N.Y. Jan. 23, 2026).

However, Judge Engelmayer denied the motion to quash as to one narrow category of information consisting of "the names of all questionnaire respondents and the dates on which they submitted their questionnaires," finding unpersuasive the plaintiffs' arguments that such information would reveal "class counsel's strategy or mental impressions" by disclosing to the defendant the universe of individuals who may have sought to participate in the litigation but whom class counsel chose not to represent. *Id.* at *12. The respondent then produced the names and dates of contact, and GM subsequently served subpoenas on other service providers that had been engaged by class counsel for the same purpose of advertising to potential class members. GM also demanded that class counsel supplement responses to its interrogatory and request for production seeking the same list of names and dates of contact from counsel. Plaintiffs' counsel refused, and GM then filed its motion to compel.

II.

GM argues that names of persons who sought to contact class counsel about the transmission defect litigation and dates of contact are relevant to its statute of limitations defense since this information is probative of when individual plaintiffs and prospective class members could have discovered or did discover information about the defect relevant to their claims. It states that it does not seek the content of the communications and insists that the identities of individuals and dates of contact are not privileged information or within the scope of attorney work product, as previously held by Judge Engelmayer, because those incidental details would not reveal which prospective clients class counsel chose to interview or represent, and it does not involve the substance of any communications or any mental impressions formed by counsel.

The plaintiffs respond that GM's request imposes an extraordinary burden because it would require the plaintiffs' law firm to cull potentially responsive data relating to contacts concerning

all of the consolidated cases involved in this litigation, and narrow the return to only those responses seeking information about the *Ulrich* litigation, which GM says is the focus of its statute of limitations defense. GM asserts, however, that disclosure of a list of names and dates of contact does not pose an "undue burden" for class counsel, because the plaintiffs' law firm admits that it has a database of contacts received from approximately 35,000 individuals for which the names and dates of contact readily "could be exported to Excel" and disclosed to defendant, and the only "burden" identified by plaintiffs is the "de-duplication" of responsive records.

The plaintiffs disagree. They explain that determining which inquiries were specifically related to the *Ulrich* action would require delving into chains of communications for each individual within the relevant time period to discern the circumstances of their situation and whether that person could be situated potentially as a class representative or absent class member in any of the involved jurisdictions for the relevant model years and purchase periods pleaded in *Ulrich*. If any required context is missing from the communication string, then individuals who made contact might need to be contacted by class counsel to inquire about missing details. Distinguishing the subpoena issued in New York to a third-party provider (which was narrowed by the court to involve merely exporting names and dates of contact for responses from a single, discrete online contact form), the plaintiffs state that the discovery investigation here would involve delving into multiple databases used internally by several different law firms, which vary in their technical accessibility and content. Moreover, the plaintiffs point out, the names and dates of contact in isolation — which are all that GM now seeks — reveal nothing about the knowledge of any prospective buyer or cohort of buyers that could inform arguments about a statute of limitations defense, which depends on what information consumers knew or reasonably could have known about a product defect that GM allegedly concealed. Finally, the plaintiffs revive the

argument that, unlike the information produced by a third-party respondent, information sought here much more directly implicates attorney work product and privileged and confidential communications between class counsel and potential clients, and GM has not carried its burden of showing an extraordinary need to pierce the veil of confidentiality protecting such information.

The scope of discovery is well-defined: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  The proportionality requirement features prominently in the present motion, since overly burdensome requests fall outside the defined scope.  The Court "must limit the frequency or extent of discovery otherwise allowed [where it finds that] . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  Moreover, attorney work-product is not discoverable unless it falls within the defined scope of discovery *and* "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A).

The plaintiffs' claims of privilege (attorney-client and work-product) are not well taken. The Sixth Circuit has recognized (applying federal law), that "[t]he attorney-client privilege only precludes disclosure of communications between attorney and client and does not protect against disclosure of the facts underlying the communication."  *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985).  Therefore, "[i]n general, the fact of legal

consultation or employment, clients' identities, attorney's fees, and the scope and nature of employment are not deemed privileged." *Ibid.* It also is not apparent how disclosure of prospective clients' names and dates of contact would reveal anything in terms of factual details memorialized in anticipation of litigation, or mental impressions formed by counsel during the course of initial consultation with any prospective class members. *See In re FirstEnergy Corp.*, 154 F.4th 431, 437 (6th Cir. 2025) (explaining that the work-product privilege found in Civil Rule 26(b)(3) "ensures that an attorney may 'assemble information, sift the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947))). The contact data sought by GM therefore also does not appear to fall squarely behind the shield of the work product doctrine. Judge Engelmayer recognized as much on both points in his ruling on the third-party subpoena objections.

Nevertheless, GM conflates the facts of the distinct discovery efforts involved in the third-party subpoena issued in New York with the first-party request to produce and interrogatory in this suit. GM also minimizes the extent of the burden — to the point of mischaracterization — that would be imposed on the several law firms engaged in this litigation as class counsel, as opposed to the relatively modest burden that was found for the third-party information broker involved in Judge Engelmayer's subpoena decision. "Undue burden is to be assessed in a case-specific manner considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (cleaned up). "Courts must balance the need for discovery against the burden imposed on the person ordered to produce documents." *Ibid.*

Here, GM glosses over the burden imposed on class counsel, asserting merely that the production sought is "the same" as that involved in the S.D.N.Y. subpoena enforcement decision. But that is not accurate.  The plaintiffs have made a persuasive presentation that the contact information sought resides in several disjunct client data repositories and encompasses a myriad of irregular communications between counsel and potential clients, which pose great difficulty when it comes to screening those contacts to determine which are responsive to the request for production in this case concerning prospective clients or absent class members who could have some involvement with the claims pleaded in the *Ulrich* litigation, which is the focus of the defendant's time bar concerns.  It is plausible, as plaintiffs' counsel assert, that extensive review of entire chains of communications with thousands or tens of thousands of individuals would need to be conducted discretely to determine what were the circumstances of each person and whether they potentially could have any involvement as named plaintiffs or absent class members associated with the causes of action pleaded in *Ulrich*.

Measured against GM's need for the information, that burden is quite disproportionate, since disclosure merely of names and dates would not, as plaintiffs point out, render any information that potentially could be probative of what any of those persons knew or could have discovered about the alleged transmission defects.  The disclosure of those names and dates appears to offer GM little more to sustain its statute of limitations defense beyond what it already knows, which is that some number of persons (approximately 35,000) had some sort of contact with class counsel that involved inquiry or advice-seeking in connection with one or more of the several product liability lawsuits consolidated in this litigation.  The burden here is remarkably heavier than that imposed on a third-party respondent in the New York subpoena dispute, where the respondent was called upon merely to produce names and dates of submission for a single

online questionnaire form associated with a specific advertising campaign, for which the provider processed and forwarded results to plaintiffs' counsel — an altogether narrower and much more cabined task than the comprehensive foray into the client databases of several law firms contemplated by the present motion to compel.

III.

In the absence of a persuasive argument from GM about its need for the information in question, and in light of the plaintiffs' demonstration of the extraordinary burden of production, the discovery sought is out of proportion to its likely benefit, as compliance with the discovery requests would pose an undue burden upon the plaintiffs.

Accordingly, the defendant's motion to compel discovery responses (ECF No. 67) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 6, 2026